UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

Case No: **15-19496-PGH**

Chapter:    **11**

**FJK III Properties, Inc.**
EIN: 65-0786266

_____Debtor_____/

**CREDITORS' PJC HOLDINGS, LLC AND PJC FUNDING, LLC'S RESPONSE IN
OPPOSITION TO DEBTOR IN POSSESSION'S MOTION TO RECONSIDER ORDER
DISMISSING CASE AND FOR EXTENSION OF TIME TO FILE BANKRUPTCY
SCHEDULES; OR IN THE ALTERNATIVE MOTION TO SHORTEN PREJUDICE
<u>PERIOD AND INCORPORATED REQUEST FOR JUDICIAL NOTICE</u>**

Creditors, PJC Holdings, LLC and PJC Funding, LLC (collectively "PJC", the "Creditors"), by and through the undersigned attorney, hereby file their Response in Opposition to Debtor In Possession's Motion to Reconsider Order Dismissing Case and for Extension of Time to File Bankruptcy Schedules; or in the Alternative Motion to Shorten Prejudice Period and Incorporated Request for Judicial Notice (the "Motion", [DE 12]) and state:

**<u>REQUEST FOR JUDICIAL NOTICE</u>**

1.    Pursuant to Federal Rules of Evidence 101, 201, 1101 and Federal Rule of Bankruptcy Procedure 9017, PJC by the undersigned counsel, hereby requests that the Court take judicial notice of the enclosed Exhibits A through E at the hearing to consider the Motion [DE 12].

2.    The exhibits contain documents that were publicly filed in other judicial proceedings and Exhibit A is a <u>consent</u> judgment which specifically contains facts and

documents stipulated to by the Debtors. Additionally, included within composite Exhibit B are documents otherwise recorded in the public record. As a result, Exhibits A-E can be properly judicially noticed by this Court.

## BACKGROUND

3. On February 25, 2008, FJK Properties Inc., (FJK) executed and delivered an Amended, Restated and Renewal Promissory Note and Mortgage, Security Agreement and Fixture Filing, and an Assignment of Rents and Leases to General Electric Capital Corporation ("GECC"). The Mortgage encumbered the property located at 230 Royal Palm Way, Palm Beach, Florida. The original principal balance of the Note was $9,361,000.00. (See Ex. A).

4. On February 25, 2008, FJK III Properties, Inc., (FJK III) executed and delivered a Note and Mortgage, Security Agreement, and Fixture Filing, and an Assignment of Rents and Leases to GECC. The Mortgage encumbered the property located at 240 Royal Palm Way, Palm Beach, Florida. The original principal balance of the Note was $5,239,000.00. (See Ex. A).

5. The loans referenced above were cross-collateralized and further secured by a Guaranty executed by Frederick J. Keitel. (See Ex. A).

6. On April 25, 2011, following a default in payment, GECC commenced a foreclosure action against FJK, FJK III, and Keitel (the "FJK Parties") in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 50 2011 CA 00612XXXXMBVA (the "Original Foreclosure Action"). (See Ex. A).

7. On April 19, 2012, the Original Foreclosure Action was dismissed without prejudice as to all FJK Parties by virtue of a Settlement Stipulation. (See Ex. A).

8. As a result of the Settlement Stipulation, FJK and FKJ III were thereafter indebted to GECC pursuant to the First Amendment to Loan Agreement dated April 17, 2012 in the

aggregate amount of $11,155,000.00 (the "Amended Loan Agreement"), which comprised two loans: (1) a loan to FKJ in the amount of $7,152,089.04 and (2) a loan to FJK III in the amount of $4,002,910.96 (collectively the "New 4/17/12 Loan"). (See Ex. A). Again, the loans were cross-collateralized.

9. The Amended Loan Agreement required FJK and FJK III, among other things, to pay $3,000,000.00 to GECC to be applied to the amounts due under the New 4/17/12 Loan. (See Ex. A).

10. The FJK Parties approached PJC Funding, LLC for the $3,000,000.00 due under the New 4/17/12 Loan, and thereafter the FJK Parties executed and delivered, among other documents, the following pertinent loan documents (Composite Exhibit B):

   a. Mortgage, Security Agreement and Filing Financing Statement by FJK Properties, Inc., as Mortgagor to PJC Funding, LLC, as Mortgagee, dated April 17, 2012 and recorded in Official Records Book 25148, Page 923, of the Public Records of Palm Beach County, Florida.

   b. Assignment of Rents between FJK Properties, Inc., as Assignor and PJC Funding, LLC, as Assignee, dated April 17, 2012 and recorded in Official Records Book 25148, Page 948, of the Public Records of Palm Beach County, Florida.

   c. UCC-1 Financing Statement between FJK Properties, Inc., as Debtor and PJC Funding, LLC, as Secured Party, recorded in Official Records Book 25148, Page 960, of the Public Records of Palm Beach County, Florida.

   d. Mortgage, Security Agreement and Filing Financing Statement by F.J.K., III Properties, Inc., as Mortgagor to PJC Funding, LLC, as Mortgagee, dated

April 17, 2012 and recorded in Official Records Book 25148, Page 963, of the Public Records of Palm Beach County, Florida.

e. Assignment of Rents between F.J.K., III Properties, Inc., as Assignor and PJC Funding, LLC, as Assignee, dated April 17, 2012 and recorded in Official Records Book 25148, Page 988, of the Public Records of Palm Beach County, Florida.

f. UCC-1 Financing Statement between F.J.K., III Properties, Inc., as Debtor and PJC Funding, LLC, as Secured Party, recorded in Official Records Book 25148, Page 1000, of the Public Records of Palm Beach County, Florida.

g. UCC-1 Financing Statement between F.J.K., III Properties, Inc., as Debtor and PJC Funding, LLC, as Secured Party, as filed April 23, 2012 in Florida Secured Transaction Registry under Filing 201206605004.

h. UCC-1 Financing Statement between F.J.K. Properties, Inc., as Debtor and PJC Funding, LLC, as Secured Party, as filed April 23, 2012 in Florida Secured Transaction Registry under Filing 201206604997.

i. Fixed Rate Promissory Note in amount of $3,200,000.00 dated April 18, 2012, executed by FJK PROPERTIES, INC., a Florida corporation, F.J.K., III PROPERTIES, INC., a Florida corporation and FREDERICK J. KEITEL, III, individually and payable to PJC FUNDING, LLC.

j. Loan Agreement by and between PJC Funding, as Lender and FJK PROPERTIES, INC., a Florida corporation, F.J.K., III PROPERTIES, INC., a Florida corporation, and FREDERICK J. KEITEL, III, individually, as Borrower.

    k. Stock Pledge Agreement between Frederick J. Keitel, III and PJC Funding, LLC dated March 18, 2012.

    l. UCC-1 Financing Statement between Frederick .J. Keitel, III, as Debtor and PJC Funding, LLC, as Secured Party, as filed April 23, 2012 in Florida Secured Transaction Registry under Filing 201206605012.

11. On September 2, 2014 GECC commenced another foreclosure proceeding to foreclose mortgages and for turnover of leases and rents and for damages against FJK Properties, Inc., FJK III Properties, Inc. (collectively, "Debtors") and PJC Funding, LLC in the Fifteenth Judicial Circuit, Palm Beach County, Florida, Case No. 50 2014 CA 010666 XXXXMBAH (the "Pending Foreclosure Action") as the result again of a payment default by the Debtors. (See Ex. A).

12. On February 26, 2015, the Debtors FJK Properties, Inc. and FJK III Properties, Inc., and the Creditor PJC Funding, LLC entered into a **CONSENT** Final Judgment of Foreclosure with GECC, which set a **sale date** of **May 27, 2015**. (See Ex. A).

13. On May 18, 2015, PJC Holdings, LLC, an affiliate of PJC Funding, purchased an assignment of GECC's Consent Final Judgment of Foreclosure for $10,929,910.06. (See Ex. C).

14. On **May 26, 2015**, on the eve of the foreclosure sale, the Debtors FJK Properties, Inc. and FJK III Properties, Inc., filed two (2) SINGLE-ASSET REAL ESTATE (SARE) bankruptcy cases (Case no. 15-19494-PGH, *In re: FJK Properties, Inc.*) and (Case No.15-19496-PGH, *In re: FJK III Properties, Inc.*). The bankruptcy cases were filed by Frederick J. Keitel, an attorney and also the sole officer and sole owner of both Debtors.

15. On May 28, 2015, the Debtors were served with notice delineating the deficiencies in their filings, specifying each document which needed to be filed, providing the

deadline for filing, and <u>clearly</u> warning them that failure to file the documents by the deadline may result in the dismissal of the petitions without further notice.

16. On June 15, 2015, both bankruptcy cases were dismissed with prejudice for 180 days by this Court. (See 15-19494-PGH [DE 10] and 15-19496-PGH [DE 09]).

17. On June 15, 2015, following the dismissal of the bankruptcy cases, the Creditor PJC Holdings, LLC filed a Motion to Substitute Party Plaintiff and to Reset Sale filed in the Pending Foreclosure Action. (See Ex. D.)

18. On June 25, 2015, at 8:45 a.m., a hearing was held on the Creditor's Motion to Reset Sale; Debtors' counsel was present, and the state court granted the Motion to Substitute Party Plaintiff and to Reset Sale. There was no mention that the Debtors would be filing motions for reconsideration or new bankruptcy cases with this Court. A new sale date was set for **August 10, 2015**. (See Ex. E).

19. Following the hearing, on June 25, 2015, after 6 p.m., the Debtors filed the instant unverified motions in both bankruptcy cases seeking reconsideration of the order dismissing the bankruptcy cases or to shorten the prejudice period to file new bankruptcy cases. (See 15-19494-PGH [DE 13] and 15-19496-PGH [DE 12])

## MEMORANDUM OF LAW AND ARGUMENT

### I. RECONSIDERATION OF DISMISSAL ORDER

20. The Debtor asserts that its failure to complete its schedules was the result of excusable neglect, caused by factors beyond its control, warranting relief from the order of dismissal pursuant to Federal Rule of Bankruptcy Procedure 9024 and, by incorporation, Federal Rule of Civil Procedure 60. The Debtor is correct that relevant factors include: the reasons for the conduct necessitating the motion, whether the need for the motion was within the Debtor's

control, whether the Debtor acted in good faith, and whether there will be prejudice to PJC. The burden is upon the Debtor to show entitlement to the relief. *In re Intelligent Med. Imaging, Inc.*, 262 B.R. 142, 146-47 (Bankr. S.D. Fla. 2001); *Lincoln Sav. Bank v. Carmelita Dev. Corp.*, 88 F.R.D. 648, 652 (D.P.R. 1980). In this case, the Debtor has not shown any of the requisites for vacating the order.

### A.     Excusable Neglect

21.     It is important to note that at the time Frederick J. Keitel, as attorney for the Debtors and their sole officer and owner, filed case nos. 15-19494-PGH and 15-19496-PGH on May 26, 2015, there were at least two other pending Chapter 11 bankruptcy cases of companies in which Mr. Keitel is also the sole officer and sole owner. Specifically, case no. 15-10576-PGH, *In re: WMK Properties, Inc.* and case no. 15-10580-PGH, *In re: Florida Capital Management, LLC* were both filed January 12, 2015 (thereafter jointly administered in lead case 15-10576). Both companies were represented by the law firm of Marshall Socarras Grant, P.L. which moved to withdraw as counsel May 20, 2015; an order granting the firm's withdrawal was entered May 28, 2015.

22.     The Debtor's entire motion is based upon its ability to show excusable neglect, which depends upon the reasons for its failure to file its schedules. Yet the explanation for the failure is vague and incomplete at best. The Debtor's new attorney argues that Mr. Keitel (former counsel) "may not" be admitted to practice before this Court, despite the fact that Mr. Keitel has been "practicing and appearing before this Court and the District Court for approximately 20 years," that Mr. Keitel "reapplied" out of "an abundance of caution," and "received confirmation of his admission on or about June 17, 2015." [DE 12 at pg. 2, ¶ 6 ]. Was he admitted or wasn't he? Either he was admitted the whole time and could have filed the

schedules or has been practicing law without the appropriate Bar admissions for twenty years. Did the "confirmation of his admission" affirm that he had been admitted to practice in the Southern District of Florida the entire time, or only since June 17th? The motion alleges that, <u>after</u> filing the petition by hand, Mr. Keitel tried to access CM/ECF but then learned about the questions of his admission. He filed the petition on May 26 – why did he wait until June 8th or 9th to try to file the Schedules by courier [DE 12, ¶¶ 6, 7]? He had two weeks to retain an attorney who could file for the Debtor. Without "candid and forthcoming details" explaining the facts, there has been no showing of excusable neglect. *Demint v. NationsBank Corp.*, 208 F.R.D. 639 (M.D. Fla. 2002). *Demint* distinguished *Walter v Blue Cross & Blue Shield United*, 181 F3d. 1198 (11th Cir. 1999), cited by Debtors, because it "presumes a candid, straight-forward, and undisputed explanation by the defaulting party of the reason for the failure to comply with the pertinent deadline; [t]he absence of such an explanation in this instance precludes a finding of excusable neglect." *Id.* at 643. Similarly, the absence of complete information precludes a finding of excusable neglect in this case – particularly since the facts which were given show only that the dismissal was entered as a result of choices made by the Debtors' sole owner, operator and attorney.

23. The cases cited by the Debtor are easily distinguishable from the instant case. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380 (1993), for example, gave "little weight" to the "upheaval" in the movant's attorney's law practice, but considered significant the fact that the deadline which the attorney missed was inconspicuously placed within a notice that contained a "dramatic ambiguity." *Id.* at 398-399. Therefore, the upheaval in Keitel's law practice caused by any confusion over his ability to practice within this Court would have been given little weight by the *Pioneer Court*, and the determinative factor of the

Bankruptcy Court's improper notice does not exist in this case. The Debtor was given very clear instructions as to what had to be filed when, and has not argued to the contrary.

24. In denying a motion for relief from a judgment entered after a complaint was not timely amended pursuant to an order, *In re Bautista*, 235 B.R. 678 (Bankr. M.D. Fla. 1999), explained that the movant's reliance on *Pioneer* was misplaced :

> In *Pioneer,* the Court found that the failure to timely file a proof of claim, where the notice of the bar date was "inconspicuous," "peculiar," and "left a dramatic ambiguity in the notification," was excusable. *Id.* at 398, 113 S.Ct. 1489. The Court placed great emphasis on the less than clear notice, stating that "[t]his is not to say, of course, that respondents' counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy court abused its discretion in declining to find the neglect to be 'excusable.' Under such circumstances, this Court has distinguished *Pioneer* to hold that the *failure to take action in the face of a clear order from the Court directing action fails to constitute excusable neglect under Rule 60(b),* Fed.R.Civ.P. *See In re King,* 165 B.R. 296, 298 (Bankr.M.D.Fla.1994) (failure to comply with order directing written response within 25 days was not excusable neglect); *In re Norris,* 228 B.R. 27, 32 (Bankr.M.D.Fla.1998) (failure to take action in the face of clear order amending confirmed Chapter 13 Plan was not due to excusable neglect).

*Id.* at 682-683 (emphasis added). As in *Bautista*, there was no ambiguous order in the instant case and, therefore, "no evidence of any excusable neglect by counsel .... which would warrant granting relief pursuant to Rule 60(b)." *Id.* at 683. *In re Norris,* cited by *Bautista,* denied a motion for relief despite the fact that there was no indication of prejudice or bad faith. Similarly, *Rhino Cellular, Inc. v Greenberg*, No. 06-10328, 2006 WL 1594202 (11th Cir. June 9, 2006) is distinguishable in that it involved a delay which was exacerbated by an error of the court and no evidence of bad faith.

25. Not only is Mr. Keitel's <u>unverified</u> recount of what transpired leading up to the dismissal of the bankruptcy cases totally insufficient, further it reflects a lack of complete candor.

26. The motion states Mr. Keitel attempted to access the docket on CM/ECF only after filing the petitions by hand, and that it was then "brought to his attention" that he "may" not be admitted before this Court. [DE 12, ¶ 6] However, if Mr. Keitel genuinely in good-faith believed he was admitted to practice at the time of filing, he would have initially attempted to file the petitions electronically pursuant to Local Rules 5005-4 and 9011-4(B). Therefore, it is more likely that Mr. Keitel attempted to file through CM/ECF and discovered prior to filing that he was not eligible [because CM/ECF logins are different for bankruptcy court attorney users as opposed to other attorney users in the U.S. District Court for the Southern District of Florida], and therefore Mr. Keitel more likely knowingly submitted hand-written petitions after discovering he was not admitted on the eve of the foreclosure sale in order to obtain a bankruptcy case number so that he could stop the foreclosure sales from occurring.

27. The foregoing, more likely events are further supported by Mr. Keitel's own concession that during the period in time when he was questioning his admission, he nonetheless intentionally and knowingly attempted to file schedules by the deficiency deadline while purposefully omitting his signature. Mr. Keitel's purposeful omission was, however, caught by the Clerk's office and the schedules were therefore rejected and the cases dismissed.

28. The Debtors attempt to argue that Mr. Keitel's intentional omission of a required signature was made in good-faith. However, the argument is a fallacy because it ignores the fact that Mr. Keitel in bad faith knowingly attempted to file documents, which he knew were unauthorized as evidenced by the omission of his signature for the improper purpose of continuing to use the bankruptcy process and automatic stay to prevent the occurrence of a foreclosure sale to which he had consented. Good faith should not be found where an attorney

continues to attempt to file unauthorized documents while purposefully omitting the attorney's signature to avoid the consequences of a false oath while furthering an improper purpose.

29. Mr. Keitel admits that he never attempted to bring the matter of his admission before the court. The motion does not aver that he ever sought other bankruptcy counsel to assist even on a limited basis to avoid the dismissal, or that he sought an extension of time before the dismissals. [DE 12]

30. Importantly, all the events that led up to the dismissal was well within the control of Mr. Keitel, both individually and on behalf of the Debtor, Mr. Keitel is no stranger to the bankruptcy court and, as sole officer and owner of the Debtor; he had first-hand knowledge of the foreclosure sale for months and even consented to the sale three months prior to filing the bankruptcy case.

31. The Debtor attempts to distance itself from the actions of its sole officer and owner by arguing that its failure to file its schedules was the fault of its "previous counsel," Frederick J. Keitel, III. Esq. [DE 12; ¶¶ 1, 5, 28]. The Debtor neglects to inform this court, however, that its sole officer and owner and its attorney were one and the same person, and that Mr. Keitel is also a party to some of the subject loan documents and a guarantor of the loans. Rather than ameliorate the situation, the fact that Mr. Keitel did not take whatever actions were necessary to file the Schedules actually exacerbates the situation and reinforces the lack of excusable neglect. He is a sophisticated businessman and litigant who has been involved in several recent bankruptcies and states that he has twenty (20) years of experience before this Court. The Debtor did not even have to coordinate with its attorney to make certain that the Schedules were accurate – The Debtor was its own attorney and his own client. Mr. Keitel plays

the system, each time implementing his delaying tactics until he is on the brink of losing the property.

32. Even if Mr. Keitel, the attorney at fault in this case, were not the sole owner of the Debtor, however, the motion still must be denied. As acknowledged by the Debtor, *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380 (1993), explained that; "[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 397. Not only did Debtor "voluntarily choose" the representative it now blames for the dismissal, the Debtor *was* the representative, as Mr. Keitel is the sole officer and owner of Debtor. Mr. Keitel chose to represent his solely owned entities. This choice does not constitute good cause just because he then realized that he "may" not have been able to do so. *See, e.g., In re Hancock*, 160 B.R. 677 (Bankr. M.D. Fla. 1993) (defendant's choice not to pay an attorney does not constitute excusable neglect pursuant to 9024 and 60(b)(1), *Id.* at 681.)

33. The Debtor knew there would be a foreclosure sale when the pending foreclosure was filed in September, 2014. The Debtor/Mr. Keitel knew there would be a foreclosure sale when **consenting** to the judgment in February. Despite all of this notice and consent, the Debtor filed its defective petition the day before the sale. Mr. Keitel has practiced before this Court for twenty years. His other single asset real estate entities had filed bankruptcy recently. Mr. Keitel/the Debtor knew what was required to file, but waited until the day before the sale to file, without the necessary documents, knowing that additional time to file them would be given. Mr. Keitel/the Debtor then never corrected the deficiencies despite being given two weeks from the initial filing to furnish the missing documentation. Then, the Debtor Mr. Keitel, waited until the cases were dismissed and the foreclosure sale was rescheduled to even address the need to file

the missing schedules. It was the Debtor/Mr. Keitel's responsibility to know whether Mr. Keitel was permitted to practice law in this Court. It was the Debtor/Mr. Keitel's responsibility to timely retain other counsel if Mr. Keitel was not. Every single event which led up to the dismissal of the Bankruptcy was not only within the Debtor/Mr. Keitel's control but was caused by purposeful conduct and choices. His gamemanship can no longer be allowed to prejudice Creditors or to subvert the administration of this Court.

34. Even if Mr. Keitel's conduct was not purposefully orchestrated to cause the longest possible delays, his motion must be denied. Carelessness does not constitute excusable neglect. *In re Bautista.* Unlike other circuits, the Eleventh Circuit does not require culpable or willful conduct on the part of the defendant to deny a motion to set aside a default. *In re Hancock,* 160 B.R. 677, 681 (Bankr. M.D. Fla. 1993) (citing *Gibbs v. Air Canada,* 810 F.2d 1529 (11th Cir.1987), in which the court held that the failure to answer because the complaint was lost by a mail clerk was an insufficient reason to set aside a default judgment since the failure to establish minimum procedural safeguards for responding to complaints is not excusable neglect). Similarly, the failure of an attorney (representing himself) to establish safeguards for monitoring his ability to practice law is not excusable neglect.

**B.    Prejudice To PJC**

35. As recognized by Debtor, the prejudice to be suffered by the Creditors is a factor to be considered in determining whether to vacate an order. [DE12; ¶ 14]. *In re Hancock.* PJC Holdings has over eleven million dollars ($11,000,000.00) invested in this property incurred <u>after</u> the Debtor <u>consented</u> to the foreclosure sale; PJC Funding has another three million ($3,000,000.00) invested in the property – going back as far as April 2012 when it bailed the Debtor out of its default in conjunction with the settlement of the Original Foreclosure.

PJC continues to be prejudiced by Debtor intentionally preventing PJC from recovering under its consent judgment. PJC further is prejudiced by this motion as a result of it once again being filed in an attempt to prevent a <u>second</u> sale date that has been set for August 10 2015. Even now, the Debtor seeks additional time to file the missing documents despite the fact that this case was filed as a SARE, and is subject to the SARE requirements.

**C.    Meritorious Defense**

36.    Federal Rule of Bankruptcy Procedure 9024 specifically incorporates Federal Rule of Civil Procedure 60, which, in pertinent parts, allows relief from a judgment or order upon a finding of excusable neglect. Excusable neglect, lack of prejudice and a meritorious defense must all be shown to obtain relief under this rule *S.E.C. v. Getanswers, Inc.*, 219 F.R.D. 698, 701 (S.D. Fla. 20.04)

37.    If the Debtor were serious about proving excusable neglect and a meritorious position, and about minimizing prejudice to Creditors, it would have at least proffered as part of its motion the Schedules it already prepared – both to minimize delay and to show that its position is meritorious and that its Schedules would not show on their face additional reasons for dismissal. "In showing that a meritorious defense exists defendant must make an affirmative showing that the defense would likely be successful." *In re Hancock*, at 680 (Bankr. M.D. Fla. 1993). There is no way of knowing if filing the Schedules would have prevented a dismissal because the Debtor still has not filed them.

**D.    Debtor's Prejudice**

38.    Debtor argue it they will be "substantially prejudiced" by the dismissal because it would then have to file a second petition and would have to demonstrate "good faith." How could having to show good faith prejudice it if it has been acting under good faith the entire

time? Furthermore, the Debtor knowingly <u>consented</u> to the judgment months prior to filing bankruptcy therefore the prejudice to the creditors far outweigh prejudice, if any, to the Debtor.

## II. DEBTORS' UNTIMELY REQUEST FOR EXTENSION OF TIME TO FILE SCHEDULES AND OTHER REQUIRED DOCUMENTS SHOULD BE DENIED

39. Federal Rule of Bankruptcy Procedure 9006(b) allows a motion for extension of time made after the deadline only where the failure to act was the result of excusable neglect.

40. Waiting until the last minute to file documents then experiencing difficulty using the electronic filing system does not constitute good cause for not timely filing a motion for extension of time. *In re Harper*, 497 B.R. 155 (Bankr. N.D. Ga. 2013) (waiting for the last 15 minutes to file something then having equipment problems does not constitute sufficient reason for a late motion for extension because the tardiness is not beyond the control of the movant).

> [I]t is clear that when a party fails to file in a timely manner due to a 'chosen course of action and the circumstances were within the party's reasonable control,' the courts will not offer relief from the choice taken. An extension will not be granted if the delay was due to the lack of diligence of the applicant.

*Matter of Arosemena*, 65 B.R. 246, 248 (Bankr. M.D. Fla. 1986) (denying motion to belatedly file a proof of claim which was not filed because of a change in personnel of the responsible employee).

41. Debtor did not file the petition until the day before the foreclosure sale. It did not attempt to file the missing documents until either the day they were due, or the day before. [DE 12; ¶ 7]. Nor did it ever file a motion for extension prior to the deadline or the dismissal.

42. Since administrative issues and computer problems are within the control of litigants; this Court should find that whether or not the Debtor's sole owner acts as counsel or hires someone else, whether the sole owner waits until the last minute to do what is required, and whether the sole owner is admitted to the practice of law or not, and knows whether he is so

admitted, is certainly within the Debtor and its counsel's control. Uncertainty as to whether Debtor's counsel is able to practice in a certain court and waiting until the last minute are indicia of lack of diligence, not excusable neglect. Extensions of time to file schedules, statements, and other documents required under the Federal Rules of Bankruptcy Procedure "may be granted only on motion for cause shown." Fed. R. Bankr. P. 1007. No such cause has been shown.

### III. THE PREJUDICE PERIOD SHOULD NOT BE SHORTENED

43. The Debtor concedes that it has no legal right to shorten the orders' 180 day prejudice period, so its only recourse is to invoke this Court's equitable powers. Such an attempt is futile as it is axiomatic that one cannot seek equity if he has not conducted himself equitably. As recognized in *Carmen v. Fox Film Corp.*, 269 F. 928 (2d Cir. 1920), upon which the Debtor relies, a court of equity would "never thus interfere on behalf of a plaintiff" whose conduct had been "unconscientious or unjust, or marked by a want of good faith, or had violated any of the principles of equity and righteous dealing." *Id.* at 931.

44. "Equity aids the vigilant, not those who slumber on their rights." *In re Am. Body Armor & Equip., Inc.,* 172 B.R. 659, 664 (Bankr. M.D. Fla. 1994)

> *Equity Aids the Diligent* ("Where the result complained of is induced by the plaintiff's own conduct, equity will generally refuse relief. Equity insists upon the conscientious obligations of suitors ... the maxim has been employed broadly to deny relief to those who neglect to take care of themselves, and who thereby suffer loses which ordinary care would have prevented ... relief will be denied to one whose prejudicial situation is attributable to his own 'negligence,' 'carelessness,' 'want of diligence,' 'folly,' or 'inattention,' .... These maxims are, or should be, operative in bankruptcy, . . .
>
> In re Higginbotham, 111 B.R. 955, 961 (Bankr. N.D. Okla. 1990) (emphasis added)(citations omitted)

45. An attorney/sole owner of a Debtor/entity does not act conscientiously by failing to file necessary documents, and waiting until the very last minute to correct the deficiencies,

while not even knowing if he is authorized to practice law in the appropriate court, and not retaining an attorney who is until after it is too late to do anything about it. Further, an attorney/sole owner of a Debtor/entity does not act conscientiously in failing to do anything <u>until after</u> another foreclosure sale is set. Rather, his situation is attributable to his own intentional delay actions, carelessness, and want of diligence or inattention. He therefore cannot invoke the equity jurisdiction of this Court.

## IV. SINGLE ASSET REAL ESTATE CONSIDERATIONS

46. These cases are admittedly SARE cases [DE 1; Pg 1]. As such, the Creditors would be entitled to relief from stay at most ninety days after the entry of order for relief unless the debtor has filed a plan that is reasonably capable of being confirmed or has begun making monthly payments. 11 U.S.C.A. § 362(d)(3). To the extent that any deadlines would be extended by the relief requested in the Debtor's motion, the Creditors will suffer sever prejudice, as discussed *supra*.

WHEREFORE, the Creditors, PJC Holdings, LLC and PJC Funding, LLC, by and through the undersigned attorney, respectfully requests that the Court deny all relief requested by Debtor in Possession. Alternatively, should this Court grant any portion of the motion, then Creditors request that any relief provided to Debtor be contingent upon it paying all of Creditors' fees and costs incurred as a result of Debtors' late filings, including but not limited to the fees associated with preparing for and attending the motion to substitute parties and reschedule the sale. Furthermore, should the dismissal be vacated or the time of prejudice be shortened, then Creditors request that the ninety days provided by 11 USC 362 be measured from May 26, 2015, and that other safeguards to minimize the prejudice to Creditors be ordered; Creditors further request such other and further relief as the Court deems just and proper.

Respectfully Submitted this 9th day July, 2015

                                                By:    /s/ Leslie C. Adams
                                                        Leslie C. Adams
                                                        HAILE, SHAW & PFAFFENBERGER, P.A.
                                                        *Attorneys for Creditors*
                                                        660 U. S. Highway One, Third Floor
                                                        North Palm Beach, FL 33408
                                                        Tel: (561) 627-8100
                                                        Fax: (561) 622-7603
                                                        Leslie C. Adams
                                                        ladams@haileshaw.com
                                                        FL Bar No. 686476

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on the parties listed below, on this 9th day of July, 2015 and in the manner stated.

**SERVED VIA U.S. MAIL**:

The Debtor, all creditors, appearances and interested parties on the Official Court Matrix, except those receiving ECF Notice, a copy of which is attached hereto.

**SERVED VIA ECF NOTICE:**
Leslie C Adams on behalf of Creditor PJC Funding, LLC
leslieburgk@gmail.com, susieadams2010@gmail.com;hspbkfilings@gmail.com

Leslie C Adams on behalf of Creditor PJC Holdings, LLC
leslieburgk@gmail.com, susieadams2010@gmail.com;hspbkfilings@gmail.com

Robert C Furr, Esq on behalf of Debtor FJK III Properties Inc
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

**SERVED VIA MANUAL NOTICE:**

Frederick J. Keitel on behalf of Debtor FJK Properties Inc
240 Royal Palm Way
Palm Beach, FL 33480

                        HAILE, SHAW & PFAFFENBERGER, P.A.
                        660 U. S. Highway One, Third Floor
                        North Palm Beach, FL 33408
                        Tel: (561) 627-8100
                        Fax: (561) 622-7603

                    By:   /s/ Leslie C. Adams
                           Leslie C. Adams, Esq.
                           ladams@haileshaw.com
                           FL Bar No. 686476

```
Label Matrix for local noticing      FJK III Properties Inc           PJC Funding, LLC
113C-9                               POB 3243                         Haile Shaw & Pfaffenberger, PA
Case 15-19496-PGH                    Palm Beach, FL 33480-1443        c/o Leslie C. Adams
Southern District of Florida                                          660  US Highway One
West Palm Beach                                                       Third Floor
Thu Jul  9 15:20:59 EDT 2015                                          North Palm Beach, FL 33408-4629

PJC Holdings, LLC                    City of West Palm Beach          Florida Power & Light
Haile Shaw & Pfaffenberger, PA       4011 Clematis St                 General Mail Facility
c/o Leslie C. Adams                  West Palm Beach FL 33401         Miami FL 33188-0001
660  US Highway One
Third Floor
North Palm Beach, FL 33408-4629

General Electric Capital Corp        Holyfield & Thomas               McDonald Hopkins LLC
c/o Avi Benayoun Esq                 125 Butler St                    505 S Flagler Dr
401 E Las Olas Blvd #2000            West Palm Beach FL 33407-6105    West Palm Beach FL 33401-5923
Ft Lauderdale FL 33301-4223


Office of the US Trustee             PJC Funding LLC                  Frederick J. Keitel
51 S.W. 1st Ave.                     500 S Australian Ave #110        240 Royal Palm Way
Suite 1204                           West Palm Beach FL 33401-6235    Palm Beach, FL 33480-4304
Miami, FL 33130-1614


Robert C Furr Esq
2255 Glades Rd #337W
Boca Raton, FL 33431-7379
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)West Palm Beach                   End of Label Matrix
                                     Mailable recipients   12
                                     Bypassed recipients    1
                                     Total                 13
```